UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case # 17-CR-78-FPG

DECISION AND ORDER

LATISHA WILLIAMS,

                Defendant.

## INTRODUCTION

The Government appeals Magistrate Judge Jeremiah J. McCarthy's order releasing Defendant Latisha Williams from pretrial detention. *See* ECF Nos. 151, 154. For the reasons that follow, the Government's appeal is denied.

## BACKGROUND

On April 19, 2017, Defendant Williams and two codefendants were indicted for cocaine trafficking. ECF No. 1. The DEA could not initially locate Defendant, but the Erie County Sheriff's Office learned that her brother, co-defendant Lamel Williams, was selling cocaine at his home in Buffalo, New York. ECF No. 155 at 2. When deputies from the Sheriff's Office executed a search warrant of the home, they found Defendant attempting to flush cocaine base down the toilet. *Id.* They also discovered evidence of distribution, including scales, baggies, and $18,000 in cash. *Id.* Finally, they recovered a firearm that had been stolen from the Buffalo Police Department. *Id.* at 3. The deputies discovered the gun in a cooler located outside of the apartment's rear entry door and buried under several other items. *Id.*; ECF No. 163 at 3.

On April 28, 2017, the Court held a detention hearing. ECF No. 155 at 3. The Government and the U.S. Probation Office (USPO) recommended Defendant's detention, although Judge

McCarthy questioned the extent to which Defendant posed danger to the community, noting that the strength of the evidence tying Defendant to the gun found outside of her brother's house was weak.[1] The Court set a follow-up hearing date of May 2, 2017 for Defendant to post $7,500 in bail and find a residence with a landline where she could live. ECF No. 155 at 4. Defendant could not meet those conditions at that time, so Judge McCarthy ordered her detained on May 15, 2017 but informed her of her right to seek reconsideration based upon changed circumstances. ECF No. 47 at 2.

A federal Grand Jury returned a superseding indictment against Defendant and her co-defendants on October 4, 2017. ECF No. 74. The indictment reflects the initial charges from the August 2016 Complaint and those stemming from the discovery of the stolen firearm outside of Lamel Williams's home. *Id.*

On June 5, 2018, Defendant moved for reconsideration of bail. ECF No. 148 at 4. Defendant's aunt and uncle, Mr. and Mrs. Mixson, were willing to supervise Defendant at their home in Lockport, New York. *Id.* Defendant stated that she was close with the Mixsons, and they expressed full confidence in her ability to comply with any terms of supervised release.[2] Additionally, both individuals were willing to sign signature bonds for $20,000. On June 11, 2018, Mr. Mixson, Mrs. Mixson, and Defendant each signed a $20,000 signature bond.

Judge McCarthy's June 20, 2018 Order Setting Conditions of Release requires home incarceration, forbids Defendant from using any alcohol or drugs, requires her to submit to drug testing and participate in substance abuse counseling, and bars her from obtaining a passport, among other conditions. ECF No. 162 at 2.

---

[1] The Court takes this information from an audio recording of the April 28, 2017 detention hearing before Judge McCarthy.
[2] The Court takes this information from audio recordings of the June 11 and June 12, 2018 detention hearings before Judge McCarthy,

**LEGAL STANDARD**

The district court reviews a magistrate judge's release order *de novo*. *U.S. v. Leon*, 766 F. 2d 77, 80 (2d Cir. 1985) (stating that the district judge should "not simply defer to the judgement of the magistrate, but reach its own independent conclusion"). The Court may rely on the record of the proceedings before the magistrate judge and also accept additional evidence. *U.S. v. Colombo*, 777 F.2d 96, 98 (2d Cir. 1985).

**DISCUSSION**

The law "generally favors bail release." *U.S. v. Sabhani*, 493 F.3d 63, 75 (2d Cir. 2007). Doubts about the wisdom of release should be resolved in favor of defendants. *See Herzog v. U.S.*, 75 S. Ct. 349, 351 (1955). The Bail Reform Act requires a court to order detention only if "no condition or combination of conditions [of release] will reasonably assure the appearance of the" defendant or "will endanger the safety of any other person or the community." 18 U.S.C. § 3142(e)(1). There is a rebuttable presumption that no conditions of release could assure the defendant's appearance or protect the community if the defendant is charged with an offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." *Id.* at § 3142(e)(3)(A). This rebuttable presumption applies to Defendant, and she bears the burden of producing evidence that she does not pose danger to the community or risk of flight. *U.S. v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). The presumption will not disappear even if Williams meets this burden but remains a factor for the Court to consider. *Id.*

Even in a case where the statutory presumption applies, the government retains two burdens of persuasion: 1) to establish by "clear and convincing" evidence that the defendant presents a danger to the community, and 2) to establish by "a preponderance of the evidence" that the defendant is a flight risk. *Id.* The Bail Reform Act requires the district court to examine several

factors when determining whether the defendant has rebutted the presumptions of flight and dangerousness, including the nature and circumstances of the crime charged, the weight of the evidence against the defendant, the defendant's history and characteristics, and the nature and seriousness of the danger to the community and/or to an individual. *See id.* at § 3142(g). When applying these "factors to any particular case, the court should bear in mind that it is only a limited group of offenders who should be denied bail pending trial." *U.S. v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987). The Court will discuss these factors in turn.

## I. Nature and Circumstances of Crimes Charged

First, the Court must consider the nature and circumstances of the offense, including whether the offense involves "a controlled substance." 18 U.S.C. § 3142(g)(1). Here, Defendant is charged with numerous narcotics violations, unlawful possession of a stolen firearm, and being a felon in possession of a firearm. The strength of the government's evidence supporting these charges is another issue, but the nature of the offenses weighs in favor of detention. *See U.S. v. Morgan*, No. 12 Cr. 223(VM), 2014 WL 2465278, at *2 (S.D.N.Y. May 12, 2014) (noting that being a felon in possession of a firearm is a crime of violence under the Bail Reform Act and that the charge thus weighs in favor of detention).

## II. Weight of the Evidence

Second, the Court must consider the weight of the evidence against Defendant. 18 U.S.C. § 3142(g)(2). When "evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long . . . a defendant has stronger motives to flee." *U.S. v. Fama*, 13-CR-234, 2013 WL 2467985, at *4 (W.D.N.Y. Nov. 10, 2014). The Government's evidence for some of the charges against Williams appears to be strong. The Drug Enforcement Administration (DEA) successfully conducted controlled buys from Defendant and

her co-defendant brother in July and August of 2014. The evidence tying Williams to the contraband discovered in and outside of her brother's home on March 21, 2017, however, seems less strong.

For one, Williams asserts that she "had nothing to do with the apartment other than the fact that her brother lived there, and she occasionally visited him at that location," and she claims that she had only been at the apartment for a few minutes before it was raided. ECF No. 163 at 2. Indeed, she "was not on the lease and none of the utilities were in her name," she "did not store any of her personal belongings there," and no "drugs were found" on her. *Id.* Additionally, the evidence tying her to the firearm, as Judge McCarthy has indicated, appears weak. The firearm was recovered in a cooler outside the apartment in an area not covered by the search warrant. *Id.* It was buried under several other items in an area that the occupants could not have been quickly accessed when the police searched the apartment, meaning that "no occupant could have run to the cooler and hid the firearm there." *Id.* The Government's appeal repeatedly discusses the stolen firearm but never convincingly links it to Williams. That said, Williams does not rebut the Government's statement that the police observed her attempting to flush cocaine base down the toilet during the March 2017 search of her brother's home.

Overall, the evidence implicating Williams in drug crimes seems substantial and is perhaps enough to tip the "weight of the evidence" factor in favor of detention; it does not do so decisively, however, given the lack of evidence tying Defendant to the stolen firearm.

## III. Defendant's History and Characteristics

In determining Williams's history and characteristics, the Court considers her "character, physical and mental condition, family ties . . . length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, . . . record concerning

5

appearance at court proceedings," and "whether, at the time of the current offense or arrest, [she] was on probation, on parole, or on other release pending trial . . ." 18 U.S.C. § 3142(g). The Government points out that Williams has "numerous convictions, almost all of which related to controlled substances," ECF No. 155 at 11, and that she has a history of using drugs. *Id.* It also believes that Williams's purported strong ties to Buffalo are undermined by her transient lifestyle, as she has stayed with relatives in other states, including Georgia, Ohio, Florida, Michigan, and Rhode Island. *Id.* at 13. Additionally, the Government stresses that the USPO questioned Defendant's sister-in-law, Savannah Williams, who was "aware" that Defendant lived in Buffalo her whole life but was "not aware of the defendant ever traveling or living outside of New York." *Id.* at 14. According to the Government, Savannah Williams's ignorance of Defendant's travels indicates that "even her own family members . . . cannot verify" Defendant's whereabouts and corroborates the "difficulties experienced by the DEA when agents attempted to arrest her following this Court's signing of the arrest warrant in August of 2016." *Id.*

Defendant counters that she has no contact with Savannah Williams, who is not even married to her brother anymore, and that consequently "Savannah Williams would have little or no information about [her] living arrangements or employment." ECF No. 163 at 5. Moreover, the USPO had contact information for Defendant's own sister, Sparkle Williams, but never attempted to contact her. *Id.* As defense counsel pointed out at a few hearings, it does not appear that the Government diligently attempted to locate Defendant or verify her account of her whereabouts. In any event, that Defendant was homeless and stayed with out-of-state relatives for a time does not undermine her ties to Buffalo. Defendant was born and raised in Buffalo and has two brothers, a sister, aunts, uncles, nephews, and nieces who reside there. Defendant attended grammar and high school in Buffalo and has held jobs there. Moreover, she does not have a

6

passport or currently possess the necessary funds to travel. Furthermore, Defendant was not on probation, parole, or release pending trial when she was arrested in March 2017.

Most importantly, Defendant has a close relationship with her aunt and uncle, who are so confident in her ability to comply with release conditions that they both signed $20,000 surety bonds. Judge McCarthy observed Defendant's aunt and uncle's sincerity during detention hearings, and this Court discerned the same by listening to recordings of the hearings. While Defendant has a history of marijuana use, it is not evident to the Court that drug testing and counseling, which are conditions of her home detention, will be ineffective in eliminating that behavior. On balance, the Court does not find that Defendant's history and characteristics weigh in favor of detention.

### IV. Nature and Seriousness of the Danger to Any Person or the Community

Lastly, the Court must ascertain the nature and seriousness of any risk of danger if Defendant is released before trial. 18 U.S.C. § 3142(g). The Government's argument that Defendant is dangerous mainly relies on the discovery of the firearm in a buried cooler outside of her brother's home. *See* ECF No. 155 at 17. As previously discussed, however, the evidence connecting Defendant to that gun appears weak. While Defendant does have a criminal history, she has no criminal convictions for assault or have any record of threatening another person and had no misconduct issues while she was incarcerated for approximately one year pending trial. *See* ECF No. 163 at 8; audio recording of 6/11/2018 detention hearing. It is simply not evident to the Court that Defendant poses danger to the community or to any particular person, especially under the close supervision of her aunt and uncle and under stringent conditions of home detention. After analyzing the factors specified in 18 U.S.C. § 3142(g), the Court does not find by a

preponderance of the evidence that Defendant is a flight risk or by clear and convincing evidence that she is dangerous to the community or to another individual.

## CONCLUSION

For the reasons stated, the Government's appeal of Judge McCarthy's June 11, 2018 bail order (ECF No. 151) for Defendant is DENIED.

IT IS SO ORDERED.

Dated: July 31, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court